YORK & CUMBERLAND RAILROAD CO. *versus* JOHN G. MYERS.

The equity powers of this Court are limited to those conferred and enumerated by statute.

The wrongful possession and conversion of the property of a corporation does not differ from any other trespass or tort, for which the sufferer has a remedy at law.

Where a mortgagee advertises to sell and convey the mortgaged property, "to the full extent of the powers derived to or by him under and by virtue of said deed, and *not otherwise,*" he proposes only to exercise a legal right.

If his deed does not authorize him to sell, then he can convey nothing, and no injury could be sustained by the mortgagers.

In such case this Court will not grant an injunction to restrain the mortgagee.

BILL IN EQUITY. The plaintiffs allege that the defendant has, under pretence of authority under a certain deed of mortgage held by him, attempted to take possession of the railroad of the corporation, the plaintiffs' personal property pertaining to the same, and all the corporate franchise, and that he now claims that he has possession, and has divested the corporation of its corporate powers, putting an end to its corporate existence, and that he has interfered with the management of the trains, and removed officers appointed by the directors; that he has advertised the railroad and all the other property, with certain exceptions, for sale at auction.

A description of the mortgage deed, with other facts in the case, sufficient to make clear the points decided, are found in the opinion of the Court.

The bill prays that the defendant may be enjoined from attempting to make any sale of the property mentioned in the mortgage, until his right to do so, and the extent of his rights are established by judgment of Court; that he be required to give sufficient security to apply any income of the road which may come to his possession to the payment of the bonds, and interest thereon, and to indemnify the corporation and the stockholders from any damage by his negligence, and the negligence of his servants, before he take or attempt to take any possession of the property of said corporation, and also to indemnify the corporation against the contract to carry

the mail, and the payment of the first issue of bonds and coupons.

The case was heard on demurrer to the bill.

*J. C. Woodman*, for plaintiff.

I. It appears by the bill, that defendant is a trustee for the bondholders, and that the bonds have been alienated by defendant, and separated from the mortgage. That in such a case, the mortgagee becomes trustee for the holders of the personal securities so sold and separated, is well settled. 2 Story's Eq. 1016; *Haines* v. *Wellington*, 25 Maine, 458; *Johnson* v. *Candage*, 31 Maine, 30; *Parsons* v. *Wells*, 17 Mass. 425; *Cram* v. *March*, 4 Pick. 131; *Smith* v. *Kelley*, 27 Maine, 240.

II. The case finds Myers in possession. The mortgagee in possession is trustee for the mortgager. 2 Story's Eq. § § 1013, 1015, 1016.

III. If the Court is satisfied that there is danger of a misapplication or waste of the trust property, it can intervene by the appointment of a receiver, or by requiring sufficient security for the protection of the trust funds. 2 Story's Eq. § § 827, 828, 829, 831, 835, 845, 846, 847; R. S., c. 96, § 10 and 11.

IV. The mortgagee is trustee for the bondholders primarily, and secondly of the corporation, who have an interest in various points of view. 4 Kent's Com. 140; 2 Story's Eq. § § 1024, 1025.

V. The Court favors the right of redemption. 2 Story's Eq. § 1019; 4 Kent's Com. 252, 253; *Seton* v. *Slade*, 7 Ves. 273; *Heldridge* v. *Gellespie*, 2 Johns. 30; 2 Cow. 324, 331.

The bill alleges, and it is admitted, that the president and directors had not authority to mortgage the property to secure the construction contract; that Myers has recovered judgment against the corporation for more than $170,000 for breach of construction contract; and that defendant threatens to sell the whole property, and apply the same to pay his own private debt. In such case, it is the duty of the corporation to interfere. *Kingsley* v. *Ames*, 2 Met. 30.

VI. It is alleged and admitted, that the corporation is

obliged to carry the U. S. mail, ·by contract and by law. See charter of the company, § 12. There is nothing binding on defendant to carry the mail, and the Court should not allow him to take possession of the road till assurance is given that the mail will be carried.

VII. The injunction prayed for ought to be granted.

1. The bill alleges, and the demurrer admits, that the construction contract of Aug. 5, 1850, as modified Feb. 6, 1851, was not embraced in the mortgage. The clause, "and if said contract shall also be fully performed in all other respects, then this deed," &c., it is alleged in the bill, and admitted by the demurrer, was inserted in the mortgage without authority.

The clause referred to is inconsistent, also, with all the remainder of the deed, and should be rejected for repugnancy. See rules for construction of deeds, 1st to 8th, 1 Shep. Touch. pp. 86 to 88; *Vose* v. *Handy*, 2 Greenl. 332; *Keit* v. *Reynolds*, 3 Greenl. 393; *Wing* v. *Burgess*, 11 Maine, 111.

2. Myers had no authority to take possession under the actual conditions of the mortgage. There was no breach of those conditions. The bonds themselves were never presented for payment, and the certificates, called coupons, were not negotiable, were issued without consideration and without authority, and are not payable at all.

It is alleged in the bill, that the railroad bed, &c., are real estate. The property in the mortgage is partly real and partly personal estate. The mortgage cannot be foreclosed in less than three years after breach, and the mortgagee has no power under the deed to sell.

Most of the personal property was purchased after the mortgage, and has been mortgaged to other persons, who have taken possession. Of this there is no doubt, and the demurrer admits it. *Jones* v. *Richardson*, 10 Met. 481; *Barnard* v. *Eaton*, 2 Cush. 294; *Codman* v. *Freeman*, 3 Cush. 306.

Every thing that springs out of the land in this case is real estate. R. S., c. 1, art. 10, § 3; R. S., c. 81, § § 2, 3, 6, 7;

Charter of Y. & C. Railroad, § § 1, 2, 5, 15; Stat. 1845, c. 159, § 3; *Ib.* c. 165, § 1; R. S., c. 1, art. 10, § 3; 2 Kent's Com. 275; *Boston W. P. Co.* v. *Worcester Railroad Co.,* 23 Pick. 392, 393.

3. It is alleged, and admitted by the demurrer, that the charter is inalienable without the consent of the State. Mr. Woodman cited and commented on the following statutes: — The charter, § § 1 to 19; R. S., c. 81, § § 1 to 21, 24; Stat. of 1842, c. 9, § § 1 to 6; Stat. of 1845, c. 165, § 3; Stat. of 1846, c. 197, § 4; Stat. of 1849, c. 145, § § 1, 2; Stat. of 1845, c. 171, § § 1, 2; Stat. of 1852, c. 220, § 1; *Ib.* c. 247, § 1; Stat. of 1853, c. 44, § § 1 to 5; *Ib.* c. 41, § § 1 to 4, 9, 10, 11, 18, 19, 20; Stat. 1854, c. 93, § § 1, 2; *Ib.* c. 107, § 1; Stat. of 1855, c. 161, § § 1 to 7; R. S., c. 117, § § 20 to 23.

VIII. The deed conveys no legal estate to any bondholder, and no more to Myers than to any other bondholder. It gives him a legal estate in trust for the bondholders. If one bondholder could sell, all could, and all could sell on the same day. ·

IX. The defendant having no right of entry, and no power to make the sale, the injunction ought to be made perpetual, to prevent litigation, to prevent waste, and ‚contingently, to avoid an irreparable injury, and for various other causes. R. S., c. 96, § § 10, 11; 2 Story's Eq. § § 901, 928, 905, 906, 907, 908, 977, 978, 1225, 1287, 826, 954, 914, and authorities there cited. Mr. Woodman examined these authorities, and enforced his views at length.

*F. O. J. Smith,* for defendants.

I. The plaintiffs are estopped of all rights to the relief prayed for, by their deed of mortgage and trust to the defendant.

II. The operation of the deed so made, vested the legal title of the property it describes solely in said Myers, subject only to two conditions of defeasance; but for the benefit of himself and "his assigns, who shall become the holders of the bonds and coupons."

III. The stipulations and covenants of the deed reserve

specially "the possession and uses of said premises," to the grantors, so long as payment shall be made of the bonds and coupons; but, upon failure thereof, for the term of sixty days, the holder of said bonds, or any one or more of them, is authorized to take possession, for the common benefit of the holders of all the bonds.

Under this power, while it is competent for any unpaid bondholder to take possession, &c., the *legal* title, being in defendant, must proceed from him.

The plaintiffs claim to enjoin the defendant in the execution of a trust he is now endeavoring to execute, for the benefit of himself and the bondholders.

Equity will not interpose an injunction upon a mortgagee in possession, if he can swear that any thing is due to him upon the mortgage. Eden on Injunctions, 1st Am. Ed. p. 219; *Quarrell* v. *Bickford,* 13 Ves. 378; *Cholmondely* v. *Clinton,* 2 Jac. & Walk., 1 to 189; 2 Story's Eq., § 1013, note 3; *Parsons* v. *Welles & als.,* 17 Mass. 419.

IV. It is denied, that defendant has any rights as mortgagee, except in his fiduciary capacity.

Our answer is, that the deed to defendant is conditional, (1) to pay bondholders, and (2) to perform the contract " in all other respects."

As to the principles governing in the construction of contracts, we cite Willes' R. 332; 2 Comyn on Contracts, 534; *Patrick* v. *Grant,* 14 Maine, 233; *Chase* v. *Bradley,* 26 Maine, 531.

V. The plaintiffs' rights are not free from reasonable doubts, to say the least. In such case a court of equity does not interfere. *North River Steam Co.* v. *Livingston,* 3 Cow. 755; *Livingston* v. *VanIngen,* 9 Johns. 585; *Snowden* v. *Noah,* Hopkins' R. 347; *Akrill* v. *Selden,* 1 Barb. 316; *Olmstead* v. *Lewis,* 6 Barb. 182; *Society* v. *Holsman,* 1 Halst. Ch. 126; *Warne* v. *Morris Canal & Bank. Co.* 1 Halst. 410; *Webster* v. *S. E. Railway Co.,* 1 Eng. Law & Eq. Rep. 204; *Doughty* v. *Railroad Co.,* 7 Halst. 51; *Chesapeake & Ohio Co.* v. *Young,* 3 Md. 480.

VI. The defendant does not assume to sell an absolute title, but only to the extent of the powers in the plaintiffs' deed to him, and "not otherwise." This remark is an answer to all the objections raised to the power of defendant to sell.

VII. It is insisted that the vote of the stockholders, referred to in the mortgage, did authorize the execution of such a deed. The attention of the Court is called to the language of the vote itself.

But the directors were fully empowered by the fifth section of the charter, without such a vote. The better opinion is, that the directors have *sole* power to do such business. Angel & Ames on Corp. § 279; Corporation By-laws, Art. 14.

VIII. The plaintiffs' denial, that the non-payment of the coupons, executed upon a separate sheet of paper from the bonds themselves, constitutes a breach of the covenants in the mortgage, if not a captious objection, is certainly one of strict law, having no pretence to equitable relief, much less to interposition by injunction. See Act of Legislature of April 4, 1856.

IX. The plaintiffs' case presents this most remarkable absurdity;—they claim the benefit of an injunction, not for any wrongs perpetrated or threatened to themselves, but to the bondholders, and this without any request of the injured parties.

X. Let the plaintiffs pay the bondholders and the defendant, and they at once disarm him. Let them do equity, and they will receive equity. 2 Story's Eq., § 771; Story's Eq., § 959, a; Baldwin's C. C. R. 218.

*Evans*, for plaintiffs, in reply.

I. The power to grant injunctions is broad and comprehensive. R. S., c. 96, § 11. The case is one of equity jurisdiction, either as one of mortgage or trust.

II. The question is, does the bill on its face show a case. 3 Eq. Dig. 438, c. 8; *Rose* v. *Hamilton*, 1 Des. 137. The bill shows a case where great wrong or injustice may be done, and is likely to be done.

III. We maintain that, upon the facts stated, Myers has no

right to possession, no right to sell; and it is no answer, that if so, no wrong is done that may not be redressed at law.

IV. The effect of the contemplated proceedings is to be noticed. — 1. Dissolution of corporation. 2. Stoppage of construction. 3. Injury to public. 4. Release of obligations.

V. The instances in which this power of the Court is obtained are various and difficult to be enumerated. 2 Story's Eq. § § 826, 827, 853, 854, 862, 872, note 2, 954; *Osborne* v. *Bank*, 9 Wheat. 841.

VI. The jurisdiction in granting injunctions is a wholesome one, and to be liberally exercised, in the prevention of irreparable injury, and depends on much latitude of discretion in the Court. *Kane* v. *Vandehuger*, 1 J. C. R. 12; Fonb. Eq. 52, note; 2 Johns. C. R. 222; 2 Eq. Dig. 64, 68; Observations of MARSHALL, C. J., in *Osborne* v. *U. S. Bank*, 9 Wheat. 841; 6 Curtis' Con. R. 268; Eden on Injunctions, 1, 12; *Waters* v. *Randall*, 6 Met. 483.

VII. Precedents, it is said, are not to be found. Equity does not consist of precedents, but of principles. *Simmons* v. *Hannover*, 23 Pick. 194.

VIII. Regarding the deed to Myers as a mortgage, there is no power to foreclose in the manner proposed, by sale. 7 Johns. 25; 7 Johns. 50; 7 Johns. 46, 48, 49; 2 Cowen, 195, *Willson* v. *Trout*; 1 Greenl. Cruise, Title Mortg. c. 1, § 42, p. 97, note on p. 98; Ib. (cites 3 Pick. 484; 2 Wheat. 29; 6 Met. 483; 10 Johns. 185;) 1 Greenl. Cruise, 217, Title Mortg. c. 6, § 2, Title 15.

IX. The cancellation of an instrument may be decreed, though it has become a nullity, on the ground, (among others,) that it may subject the party to litigation when the facts are forgotten. 2 Halst. 522, 627.

X. The relief sought is perpetual injunction. Same as in *Moore* v. *Veazie*, 31 Maine, 366; *Moore* v. *Veazie*, 32 Maine, 345.

XI. As for the argument, that in doubtful cases injunctions will not be granted, see 31 Maine, 378. But there is no doubt of plaintiffs' right under the charter. If defendant

sets up a right which controls it, this must be shown; statute granting possession, equivalent to judgment at law.

The R. S., c. 117, § § 20, 21, 23, provides how franchises may be sold *on execution.* No inference can be drawn, that a railroad franchise is susceptible of such or any other alienation. But, it is asked, is *no* security afforded by the deed? Is it wholly void? What is granted? I answer, all that can be, the beneficial interest, the income, by analogy to the R. S., c. 117, the right to tolls. This right may be secured by appointment of *receivers.*

CUTTING, J.—The demurrer admits the truth of all the material allegations in the bill, but the defendant, notwithstanding, denies that the plaintiffs have assigned sufficient cause to give this Court jurisdiction, or to entitle them to relief.

The bill refers to the mortgage of February 6, 1851, which we are authorized to consider as a part thereof, and to give it a construction so far as it may become necessary, under the present pleadings. It conveys in substance all the corporate property, real and personal, "unto the said Myers and his assigns, who shall become the holders of the bonds and coupons hereinafter mentioned, *each in the ratio of the bonds so held by him.*"—"To have and to hold the aforegranted and bargained premises, with all the privileges and appurtenances thereof to the said Myers, his heirs and assigns, and to the holders of said bonds and coupons, to their use and behoof forever."

And the plaintiffs covenant that they have "good right to sell and convey the same to the said Myers, and the holders of said bonds in manner aforesaid." "*Provided,* they pay to said Myers, or his assigns, who shall become the holder or holders thereof, the amounts specified in the several bonds and coupons pertaining thereto," &c. "And if said contract shall also be fully performed by said corporation in all other respects," then said deed is to be void.

Then follows that clause in the deed, out of which it seems

this controversy has mainly arisen. It is this:—"And it is further provided and a condition of this deed, that the possession and uses of said premises shall at all times remain in said grantors, so long as payment shall be made promptly, and in good faith, by said grantors of said several bonds, and the coupons pertaining thereto, as the same shall become due or payable; but upon failure thereof, for the term of sixty days, the holder of said bonds, or any one or more thereof, shall be, and hereby is, authorized and empowered to take full and complete possession of said premises and mortgaged property, personal and real, rights of way and corporate franchise, without hindrance or process of law, for the common and joint *benefit and use of the holders of all the bonds*, so previously issued, and whether payment then be due or not, and in satisfaction thereof; *and such holders* shall share, and share alike, *in the disposition and sale* of the same for that purpose, by public vendue, on reasonable public notice thereof to the grantors aforesaid, first deducting from such proceeds all costs and expenses incident to such possession and sale."

The plaintiffs allege that the defendant, claiming authority by virtue of the foregoing provision, has taken possession of the corporate property, and advertised to sell the same, and reference is had to his advertisement of April 3, 1856, in which the defendant notifies the corporation that, "By virtue of the deed to me, executed by said company of the trust powers therein named, and by the concurrence of several of said bondholders, as well as in my own behalf, as grantee and bondholder, pursuant to the terms of said deed, that for breaches of the conditions and covenants in said deed contained by said company, to and with the undersigned, *as contractor*, and to and with the bondholders described in said deed, I did, on the thirty-first day of March, last past, and for the purposes of the deed and trust aforesaid, take full and complete possession of the premises and property therein described," &c., "and that I shall dispose and sell the same for the purposes aforesaid, by public vendue," &c., "to the

full extent of the powers derived to or by me, under and by virtue of said deed, and not otherwise."

It may perhaps become important, at some future time, should all the parties interested come properly before us on bill, answer and proofs, or by due process of law, to ascertain what the defendant's interest is in the mortgaged premises, whether it be any thing more than as a *bondholder*, and whether, if there should ever be a sale, as contemplated by the condition named in the deed, it could be perfected except by means of a process in chancery, when, as in cases of trust, all parties interested may be duly represented, and their several interests protected; and whether the whole property, including the franchise, or only the right to take toll, can be legally sold; but none of these considerations are now presented, except incidentally.

The bill alleges that the clause in the proviso of the mortgage, viz.:—"And if said contract shall also be fully performed by said corporation in all other respects," was fraudulently inserted, or was done without the plaintiffs' authority, which the demurrer admits to be true; and if so, then for any damages for the non-performance of the construction contract, it may be questionable whether the mortgage will afford the defendant as "*contractor*" any security.

As a bondholder, has the defendant the power under the mortgage to sell? If so, he must derive his authority solely by virtue of the condition in the deed, which provides that "the possession and uses of said premises shall at all times remain in said grantors so long as payment shall be made promptly and in good faith by said grantors of said several bonds and coupons pertaining thereto as the same shall become due and payable." The bill sets forth in substance, that all the bonds and coupons, legally issued by the plaintiffs, have been so paid, that certain bonds and coupons, subsequent to the date of the mortgage, have been illegally issued, and for which they are not legally liable, and consequently, have been justified in withholding payment.

And the bill further asserts, that the whole condition in

the deed is void and inserted without authority, all of which the pleadings admit. Under such circumstances, it is somewhat difficult to perceive by what authority the defendant can be justified at present in any interference with the mortgaged property. But with respect to the various questions herein before referred to, we wish · distinctly to be understood as giving no opinion, because we cannot but be aware, from the arguments of the learned counsel, who were permitted, to some extent, to travel outside of the record, that both parties and such as may be hereafter associated with them, if any, have great and important interests, which hereafter may be presented in a more formidable shape, and that the present issue was only designed, and now by us to be considered, as to jurisdiction in the matter, as to the relief prayed for, which, if not entertained, must operate to dissolve the injunction.

The equity powers conferred by statute upon this Court, are therein enumerated, beyond which to chancery, in this State, is all forbidden ground; which circumstance is not sufficiently considered by counsel in their arguments and citations from English and American decisions, pronounced by Courts of more enlarged equity jurisdiction.

What is really the subject matter of complaint in the plaintiffs' bill? It is, first, that the defendant has unlawfully taken possession of their property, and secondly, that he threatens to sell it, or in other words, of an illegal interference with their just and legal rights.

It is admitted, that the defendant has obtained possession, and the plaintiffs contend that such possession is wrongful. Let the inference be drawn, and how does the alleged wrongful conversion differ from any other trespass or tort, for which the sufferer has a complete and ample remedy at law?

It is further admitted, that the defendant proposes to sell, and in his advertisement has signified his determination to convey the mortgaged property, "to the full extent of the powers derived to or by him under and by virtue of said deed *and not otherwise.*" Suppose the defendant should exe-

cute his threat, and should sell and convey to the extent of his authority, and he proposes to do nothing more, he would then be in the exercise of a legal right. But the plaintiffs say, that the deed gives him no such authority. If so, then the defendant's deed would convey nothing, and no injury could be by them sustained. Again, the plaintiffs apprehend that some innocent purchaser may be ruined. It may be so, but such anticipation does not enlarge our equity powers and it is not to be presumed that the maxim of "*caveat emptor*" has lost its force and influence.

The plaintiffs' allegations, therefore, do not disclose to us any such unjustifiable interference with their rights, as to authorize us as a Court of Equity, at present, to interfere. Consequently the demurrer is sustained and the injunction dissolved.

TENNEY, C. J., and GOODENOW, RICE, and HATHAWAY, J. J., concurred.